Mr. Westhoff Yes. Good morning, Your Honor. Brian Westhoff doing the buff on behalf of Petitioner Mr. Plasencia Ayala. Yes, as Your Honor may know, we had some filings kind of at the last minute on Friday. There was a motion to remand from the government, and we filed an opposition to that motion to remand kind of late in the day. So I'd like to begin just by quickly going over the reasons that we do not believe that remand is called for in this case. First, as we stated in our brief, this Court has been over a review of this issue. The reasons the government asked for is nothing more than an application of law this Court has made, and it is entirely within this Court's ability to consider that law and apply it here. What the government probably hopes for is a different ruling. I think that's absolutely what the government hopes for, Your Honor, and they're hoping for, I believe, a different ruling than the BIA has already issued twice when they said that failure to register under the Nevada statute was not a categorical crime involved in the North Toba Troupe. And that is, that was another reason that they asked for was to consider the BIA's decision in Tobar Lobo, but that decision has been considered by the BIA, and it's been applied to this statute and to this particular petitioner. In light of the government's motion, we also ask that Mr. Picencio Ayala be released on bond pending the decision by this Court. We believe that that should be coupled with a denial of the motion to remand, considering the substantial nature of his arguments, which I will now go into. Mr. Picencio Ayala appeals the Board of Immigration and the Immigration Judge's Order of Removal. He's a legal permanent resident who's been in this country for 21 years that the government seeks to remove for having committed two crimes involving moral turpitude. The first, an opening gross lewdness conviction, and the second, failure to register as a sexual offender under the Nevada statute. Your Honor, the Nevada registration statute is extremely broad, and it covers a number of underlying offenses with varying levels of severity. Mr. Picencio Ayala's conviction for opening gross lewdness is at the lower end of severity of all those. Mr. Picencio Ayala was in a Reno, Nevada casino. He had been drinking. He was intoxicated, and he was drunk. And the Immigration Judge speculated that he perhaps misunderstood some signals, and the record's not clear, but he attempted to kiss the woman and possibly touch her breasts, and for the record of conviction states quite clearly that he did kiss and or touch her breasts and or remove an article. And this Court has said multiple times that you take the best case for the defendant, and so all we can say for certainty is that he did try and kiss her and that he maybe did kiss her. And for that, he pled guilty to opening gross lewdness and was sentenced to nine months in the county jail. When he was released, he was informed that he had a registration obligation, but there's nothing in the record that demonstrates that that responsibility or the requirements for that obligation were ever explained to him. He returned to his previous place of residence, at which point some nine months later, he was arrested for failing to register as a sex offender. To that, he was sentenced to 12 to 32 months. After serving 21 of those months, he was released, and he's been in an immigration detention facility ever since. The government's... Is he still subject to the sentence in Nevada? I'm sorry, Your Honor? In other words, if he's no longer on immigration detention, if we grant your motion for bail, pending appeal from immigration, does the State of Nevada have a hold on him? No, Your Honor. His sentence has expired. He's served his 32 months plus a little bit more. So Mr. Placenciala should be released and allowed to stay in this country for three reasons. First, the test that the government uses, the test that the government applies, is inapplicable in this case. Second, the government has failed its burden to show any evil intent on the part of Mr. Placenciala for failing to register as a sex offender. And third, the failure to register as a sex offender is simply not a base, vile or depraved act. For my first argument, the Court's recent decision in Navarro-Lopez has held that the modified categorical approach, which is the only test that the government applies to show moral turpitude on the part of Mr. Placenciala, is inapplicable in cases like this, where a jury is not required to find all of the elements of the generic crime, the crime involving moral turpitude. Here, Mr. Placenciala pled guilty to failure to register, but that failure to register is a strict liability crime that required no finding of the evil intent. This Court has held numerous times that evil intent is a required finding for a crime involving moral turpitude, and because a jury, or in this case the guilty plea, was not required to make any such finding under Navarro-Lopez, the modified categorical approach should not be applied. Second, the government has failed its burden to show any evil intent on the part of Mr. Placenciala. As I just stated, the Court has held many times that evil intent is necessary for a crime involving moral turpitude, and it's the government's burden to make such a showing based on the record of conviction. Here, the government fails that burden because the record of conviction does not establish any evil intent. And in fact, the record supports that it appears that it could have been simply an innocent mistake on Mr. Placenciala's part. As I stated earlier, there's no evidence that anyone at the State ever explained to Mr. Placenciala what the obligations were or how to go about registering, despite the fact that there are two Nevada statutes that require such corrections. Secondly, Mr. Placenciala, he testified before the immigration judge, and while that's not part of the record of conviction, and it can't be relied upon by this Court, I offer it to explain, and I offered to explain what his thought process was. And that was when the court, when the immigration judge asked him why he hadn't registered, he stated that he knew where he was, and if there were any issues, they could talk to him, presumably believing that that fulfilled his registration obligation. And in fact, there's ample reason to believe this. The Nevada law provides that the central repository was supposed to register Mr. Placenciala when he was released and was returning to his place of residence. So there's ample reason to believe that this was simply an innocent mistake and without willful or evil intent on the part of Mr. Placenciala to fail to register. Now, the government relies on the word willful in its argument, but that, Your Honors, is a red herring. Willfulness, this Court has held many times, does not establish moral turpitude. It means simply deliberately and with knowledge. And Mr. Placenciala did not believe that he had gone to register. He knew that he had simply returned home, but he was not aware and did not understand that that did not fulfill his registration obligation. In saying that, that doesn't show any evil intent on the part of Mr. Placenciala. And in fact, as I've said, it appears that it was just simple confusion. Third, the failure to register is simply not a base, vile, or depraved act. As this Court recently held in Quintra Salazar, mal and prohibitive crimes generally do not involve moral turpitude. We know that this is a mal and prohibitive crime because it does cover, it covers an offense that may be different in other states, like in Quintra Salazar. It covers an offense that is not with a moral purpose. This was a pragmatic solution, as the government admits, to aid law enforcement in keeping track of sexual offenders and, I suspect, normally much more serious sexual offenders than Mr. Placenciala. Based on the holding in Quintra Salazar, this failure to register seems much similar, more similar to other crimes that this Court has held do not involve moral turpitude. Crimes such as intercourse with a minor who is under 16 when the child is born, domestic assault, domestic battery, second-degree malicious mischief, attempted misdemeanor child abandonment, and accessory after the fact. These are all crimes that this Court has held are not so base, vile, or depraved as to involve moral turpitude, and it cannot be said that failure to register simply as a sex offender is any more base, vile, or depraved than any of those. With that said, unless there are any questions, I'll reserve my time. I have a question. Please. Would you address finality before the BIA? I'd be happy to, Your Honor. The government makes a rather novel jurisdictional argument, but as the Court held in stone, a Board of Immigration Appeals decision is final when it is issued, and that finality can be, that final decision can be both appealed to the Circuit Court as well as a motion to reopen or remand be filed and, or to reconsider, excuse me, and the filing of the motion to reconsider and the motion, or the motion to reopen does not affect the finality of the decision to remove. I'm with you so far. I'm sorry? I'm with you so far. Okay. What further did the BIA do with the motion? The BIA, first off, the basis that we are appealing, the finding of crime involving  rendering the previous, the first BIA decision as the operative decision by the BIA on the issue that we're before this Court on. And so we believe that the finality When was it denied in relation to when this appeal was taken? The appeal was taken in 06. The motion was, the motion to reconsider was denied as to that issue. It was granted for the limited purpose of failure to consider So wait a minute. When did the grant take place? Of the Court of Appeals? No, at the BIA. The BIA was only, it was an extremely limited grant, Your Honor, and it took When, not what? May 15th of this year. Now, once they grant, something can happen downstream, right? No, Your Honor, they did not Nothing? What did they grant? They only granted a motion to reconsider. Okay. And they only granted it as to Mr. Placenzaia's petition for Excuse me, Your Honor. It was only, it was the fact that the BIA had failed to consider his application for basically leniency by the Attorney General to overturn his removal petition. As of that date, the judgment of the BIA was not final. No, that's incorrect, Your Honor. Well, it isn't, because they've granted a motion by which they can rejigger their final judgment. Your Honor, three other, no other court of appeals has ever held that a failure or that a grant of a motion to reconsider First time in every case. I want to know why it was conclusive after they grant the motion for rehearing. The motion, the issue that they granted the motion, the motion, and it wasn't a motion for rehearing. It wasn't a motion to reopen, which is the case of the government site. Aren't you trying to make a distinction, and the cases have, between a motion to reopen, which says the record is now reopened, and a motion to reconsider, which, although in most other cases, in administrative law and otherwise, would indicate there wasn't final, but under Stone says you keep on going with your appeal because you aren't vacating your final order. That's absolutely correct, Your Honor. The motion to Would you distinguish for the court the differences, aside from what I said, between motions to reconsider and motions to reopen in the BIA practice? Absolutely, Your Honor. And relate it to the statute. To, I'm sorry, to which statute? To the By what authority is the BIA doing either? Oh, okay. Your Honor, and Let's first start with the definitions and the distinction on procedure, and then answer Judge Beazer's question about the statute, just so we keep it all structured. Or you can start with the statute, too. It doesn't make any difference. Make sure you cover it all, though. Okay. Absolutely, Your Honor. With the motion to reopen, Your Honors, the Board of Immigration Appeals is reopening the proceeding for the admission of new evidence, and that is something where the jurisdiction of the court naturally would be, would be removed, because by definition, new evidence is coming into the proceeding that would not be before the Court of Appeals. With a motion to reconsider, Your Honors, the BIA is making a decision based on the evidence that is already there and is not changing. And when, such as in this case, the Board of Immigration Appeals denies reconsideration on the very issue that's before this court, the question of whether failure to register as a sexual offender is a crime involving moral turpitude, when that issue, the motion to reconsider was denied, the BIA is necessarily saying that their decision, that they're not changing their prior decision from the June of 2006. Order. And as Stone said, because both are final orders, excuse me, and because the first decision is a final order, and that decision was not modified by the BIA's determination of the motion to reconsider, that issue is still the final order for the issue and is properly before this Court of Appeals. Has it been reconsidered? The issue before this Court was not reconsidered. Has it been reconsidered? The order overall was, Your Honor, but it was... And was denied. In other words, they granted the motion to reconsider but still denied relief, correct? Correct, Your Honor. When was that order entered? That was May 15th, 2007. So there's nothing presently going on in front of the BIA, is there? Correct, Your Honor. Correct, Your Honor. It was only a recon... Yes, correct. Let me ask you this hypothetically. When you first took your appeal from the BIA, if by some wonderment this Court could operate and address the petition in 30 days, how would we know what was going on at the BIA? Your Honor, if this Court were able to hear it before any decision by the BIA was issued, this Court has de novo jurisdiction and that decision would be standing. This was not a motion to reopen where new evidence could have gone into the record. It would have simply been an application by the BIA of the law, which this Court is equally more... You're saying on reconsideration it doesn't make any difference what the Board does with anything. We have jurisdiction. Overrule it on everything. Absolutely, Your Honor. That's absolutely correct. Do you take what they did into account or not? This Court reviews it de novo and I don't believe that it should be taken into account except for... Why do petitioners file for reconsideration? That's a waste of time. If it's here, it's here. I believe, Your Honor, that's why the Supreme Court allows for this double tracking of filing a motion to reconsider at the Ninth Circuit level and the motion to reconsider before the BIA. Now it's possible that... Let me ask you this. If you have an option under the statute to take a notice of appeal or to move for reconsideration or to reopen, either one, why doesn't the first action taken by the petitioner control the ongoing jurisdiction of that case until the matter under consideration is resolved to the exclusion of either the court or the BIA to make any change as the case may be based on which at first had jurisdiction? As stoneheld, that's because the order that's issued by the BIA, the first order, is a final order. And under the statute, that final order is immediately appealable to the Circuit Court. Okay. So you're saying that the petitioner does not have jurisdiction or the BIA does not have jurisdiction to entertain those subsequent motions? No, Your Honor. As stone said, as stoneheld, the BIA does have jurisdiction over a motion to reconsider or a motion to reopen, but that does not remove the jurisdiction from the Ninth Circuit. This double tracking business is unique in immigration law, right, as far as I can tell? It doesn't operate anyplace else? It is, Your Honor. It is. And as Judge Beezer said, it's most peculiar. It is. And it's to argue that when the BIA denies reconsideration even of the motion, of the issue that's directly before this Court and that that somehow would require the petitioner to go back and to refile when the basis and the decision are exactly the same as the first order, which is what the government is presenting, well, it's an extremely novel argument and it's not one that ---- Let me turn this around. Let's assume that the BIA had decided in your favor while this notice of appeal was pending, then the petition for review would then be moot, right? It would, Your Honor. If the BIA had done it right the second time, it would be moot. Okay. Thank you. Thank you. Thank you. Sorry. Let me make sure I can flip my pages. Can you hear me? Yes. You have to speak up a little bit, though. May I stop you there? This is the third month in a row that the government has filed a motion to remand on the eve of argument, which puts all of us in sort of an awkward position. I appreciate the government's willingness to take a look at the cases again, but why are you doing this so late in the game? I mean, these cases are going on for years, but we got one on the day of argument two months ago. I got one the day before argument last month, and here we have a couple of days before this month. So what's going on? No, it's not you. It seems to be the office, so I'm just asking for an explanation. Well, obviously there are several factors towards that. A lot of the time the attorney that briefs the case isn't always the attorney that argues it. And as well, our internal process of considering the cases when new case law comes out, and when we maybe see a case in which remand is perhaps necessary, it often takes some time, in which we have a lot of internal, I guess I would say, checks and balances in making those sort of considerations. Certainly in this case I was the briefing attorney, but it just took a long time to get to that point. All right. Well, let me get to the merits. I understand the answer. But I hope you'll communicate that it would be nice if the checks and balances could be expedited a bit. Even a week would be helpful. Certainly. But, I mean, people are traveling. We had a case where someone was traveling from Chicago to represent, not Chicago, I'm sorry, but Wisconsin last time. We had to turn around in midair at some expense after we granted the motion to remand. So it's not without consequences to everybody. You fly out from D.C. No. I completely understand that. And, again, my apologies. You know what I don't understand is why should we remand this time? Are you going to address that? Yes. I think remand is warranted in this case because of the two cases that came out very recently. Navarro-Lopez and Quintero-Salazar. As I stated in my motion, Navarro-Lopez clarified the modified categorical approach to analyzing divisible state statutes, noting that the modified categorical approach only applies when the particular elements in the crime conviction are broader than the generic crime. Here, as you can probably see in the Board's decision, the Board analyzed the elements of the modified categorical approach to analyzing divisible state statutes. And we analyzed whether or not this was a crime involving moral turpitude from the record of conviction. It's not necessarily we are not saying that perhaps the statute doesn't have an inherent portionfulfulness, but certainly the Board never had the chance to address that, because it under prior case law, its understanding was that it could automatically go to the record of conviction to find this element in which it based its decision that this was a crime involving turpitude, a crime involving moral turpitude. Which is why we feel strongly that this case has to go back to the Board to make this determination. Why? I guess I don't follow the logic. One, the statute, he pled guilty to the statute, basically. There are no other documents except for his plea that are in. So we've got everything, right? And the statute doesn't contain an element of willfulness, right? Well, the statute in and of itself doesn't contain... Does the word willfully used in the statute? No, it's not. So if you accidentally fail to register, it's not a defense under the Nevada statute, is it? Well, that's something certainly that the Board could address on remand. Why can't we address it right here? I'm sorry? Since we're going to review DeNovo, don't we review DeNovo? But the — first of all, if one — the Court certainly has DeNovo review, but I think the key word there is review. I mean, the Board should be allowed to address this in the first instance about whether, since it found in its analysis that it's willfully... Yeah, but usually the reason for it is because there may be some factual determination. Here we're looking at the statute. We're going to interpret DeNovo. So what is there? We're going to let somebody else... Do you see the difference if what's involved is the statute and what's involved is testimony? No, I certainly understand that. But I think what distinguishes this case from a simple statutory interpretation is specifically that there's a number of results that could come from this going back to the Board. I mean, the Board didn't address at all what the elements of the conviction were. And it is — in its June 21, 2006 decision, which I may add is the only decision before the Court today, its June 21, 2006 decision didn't address whether willfulness was part of the statute. Right. But how — let me stop you right there, because this isn't just a pure immigration question. It's a question of Nevada law. Nevada is part of the Ninth Circuit. So let's assume that the BIA said willfulness, you need willfulness, or you can't convict somebody in Nevada of this crime. Well, Nevada is not going to take kindly to that, and we're going to have to review that, I expect. In other words, we could have a state court interpretation that's completely different from the BIA's interpretation. We've got two different interpretations going in courts that we govern. Why should we just take it up right now and make the decision? Because, first of all, it's not — the Board should have the opportunity to find whether or not Nevada requires a finding of willfulness for conviction. Certainly it's not part of the statute, but I believe in one of the cases that I said in my brief in Garrison — I'm sorry. You're going to argue to the Board, I take it, that willfulness is not an element or is an element of the Nevada statute. Honestly, I cannot say what the DHS would argue. They could argue either that willfulness is part of the statute, they could argue that willfulness is not part of the statute, and that the Board should just consider whether or not failure to register as a sex offender, notwithstanding willfulness, is a crime involving moral turpitude, which is why it has to go back to the Board. The Board didn't address whether or not failure to register as a sex offender without willfulness could be a crime involving moral turpitude. And that is something that the Board should have the ability to decide in the first instance. I mean, this is exactly sort of the circumstances that Fernandez-Ruiz sort of considered as a possibility, that intervening case law could come out, that the Government could essentially state that it had relied on the preceding case law to make its determinations, and that it didn't have the opportunity to present additional evidence to say that willfulness, for example, is necessary to obtain a conviction under the statute, or in the opposite, that willfulness is not part of the conviction. So in this particular case, this is the exact circumstances that was contemplated under Fernandez-Ruiz. Are you saying you're going to make different arguments about the statute than you would here today on remand? I think that's exactly what the point of remand is, that Navarro-Lopez has opened up this can of worms that the Board could consider. I don't think it changed the law all that much, Navarro-Lopez. I sat on that case. I mean, it was a long history of saying that strict liability crimes don't count as crimes of moral turpitude, basically. Well, I believe that the word would be generally don't count, I think is what the cases normally say, that strict liability crimes generally are not considered crimes involving moral turpitude. But Navarro-Lopez, another part of Navarro-Lopez, the two parts of Navarro-Lopez that are pertinent to this particular case is not only their clarification of the modified categorical offense, but also their clarification of what exactly a generic crime of moral turpitude was. They stated without going any further, they defined a generic crime of moral turpitude simply to be one of vile, base or depraved and violate societal moral standards, period. They didn't go any further than that in defining what a generic crime of moral turpitude was. Certainly it has to go back to the Board to determine whether or not Navarro-Lopez and Quintero Salazar, what type of impact it has towards their analysis. I mean, whether or not one considers failure to register without any sort of willfulness or knowledge or intent is relevant. I mean, I think that there's inherent change in our conception of what moral turpitude is in Navarro-Lopez, and as well a change in how we define what a modified categorical offense is. Excuse me, what the modified categorical approach is. And that's something that the Board should have the ability to determine in the first instance. It is a fundamental change. Well, under the modified categorical, well, first of all, you have to decide whether or not it's categorically a crime of moral turpitude. What do you have, let's assume that we decide that it's not categorically a crime of moral turpitude. What's left under the modified categorical approach on the record of this case? Well, I would, I believe that it would be speculative for me to approach that at this point, but just as an example, under the modified categorical approach, the Board in its June 21, 2006, decision found it was divisible on the basis that there were several parts to the statute, and that this statute in particular. Now, the modified categorical approach looks at the facts of the case. Yes. Judicially noticeable facts, and you said they looked at the statute. The statute is the categorical approach. Facts are the modified categorical approach. It's not that they weren't directly found, but they were, it seems to be in their June 21, 2006 decision that the only element that they were considering of a statute that was divisible was that is the first part, A, fails to register with a local law enforcement agency. So from there, the Board would have to analyze in terms of an element of the conviction whether or not willfulness was inherent in the statute or not. I'm sorry, I don't mean to interrupt, but I don't understand how the modified categorical approach would apply in this case. You keep going on, you keep talking about the Board would have to construe the statute. Now, that's categorical. Yes. Modified categorical, or is there something else? Are the judicially noticeable facts in a case when categorically the statute doesn't qualify? Is there something else there? I completely understand what you're saying, and I think this is exactly... So when you say we have to consider the modified categorical approach, what are you talking about in the record of this case? Because all we have is the conviction and the plea, and that's already in the record, right? Yes. So what in those, what can you tell me in those documents separates it out from the statute? If I can divide this into parts. Under Navarro-Lopez, they're saying that under the modified categorical approach, you have to find what is the elements of the conviction that he has to be convicted under. If he has to find that he has failure to register as a sex offender, which is something that they did not do in their decision here, only considering that particular element, then the Board would have to be making a decision whether or not failure to register as a sex offender, that particular conduct is a crime involving moral turpitude, period. However, under Navarro-Lopez, the Board, the reason we want to remand Navarro-Lopez as a sex offender is we wish the Board to make the finding, the decision of whether or not under the statute of conviction an element of the conviction is whether or not there has to be willfulness to be, for the petitioner to be convicted. So again, that to me is purely a categorical, not modified.  I understand what you're saying, but I think that's what Navarro-Lopez changes, because the Board could look at the record of conviction here and pull willfulness out of the record of conviction. But I think that Navarro-Lopez's examples in Lee are probably instructive. It said, essentially, you can't go beyond elements of the conviction. So if the conviction is A plus B equals crime involving moral turpitude, then you can't go beyond that. But the crime of the record of conviction only has, I'm sorry, I'm losing track of A plus B, but essentially if they have to find what the elements of the conviction are first, they have to find that the elements of the conviction is A plus B before they can look at the record of conviction. And only if the record of conviction has A plus B can they find under the modified categorical approach that it's a crime involving moral turpitude. I think that's essentially, it's extraordinarily a complicated way to think of modified categorical approach, and it differs from the way that the Board analyzed it here. I think what Your Honor is proposing is exactly what the Board did here, and which Navarro-Lopez possibly forecloses, and which is what the Petitioner is arguing. I disagree with you on that. Yeah, I think we're just, we're probably talking past each other here. But the facts of this case, the judicially noticeable facts, don't add anything to the analysis, wouldn't you agree? I would ask what one means by doesn't add anything to analysis. Look, you've got the statute of conviction. Yes. In some cases, in some cases, because we deal with the modified categorical approach in a whole host of cases, not just immigration, but in sentencing and so forth. But in some cases we say, well, the generic statute doesn't qualify, but you admitted to things in the plea colloquy. You admitted to acts in the plea agreement that are judicially noticeable documents that establish that you do qualify for the sentencing enhancement or approve the elements of the crime. All I'm saying is I don't see that on this record. Do you? I believe that you would, because let's just say, I'm running out of time, but may I try to continue? Let us, for a hypothetical example, let's just say that it went back to the board. The board finds that inherent in the statute, to be convicted, one has to find that willfulness, to be convicted, one has to find willfulness. They can go back to the record of conviction here, and in the plea agreement for the first register, for the first crime involving moral turpitude, for example, there's, he has noticed that he has to register. As part of the plea agreement, in the plea agreement it says you are notified, to paraphrase, it says you are notified of your requirement to register as a sex offender. The board can go back to the record of conviction and say, he has noticed, therefore he has knowledge, therefore there's willfulness here, and we find that this is a crime involving moral turpitude, if they found that willfulness was a part of the statute of conviction. But that's not the analysis that they use here. The analysis that they use here doesn't address what are the elements of the conviction, which is exactly what the petitioner is trying to argue here, which is exactly the reason that we think it needs to go back to the board to address this. So let's get to the statute. Why do you think the statute, which does not contain the word willfully, in fact contains willfulness as an element of the crime? Because the statute, the element of the conviction, the requirement of what they have to be, what has to be proven to convict them under the statute, it's not completely always self-evident. It's not always self-contained in the statute itself. If, for example, in the case that I said... What's your best argument under Nevada law? I'm sorry? What's your best argument or case under Nevada law that willfulness is an element of the crime? Well, in Millett v. The State, the Nevada case that I cited there, they were discussing it in a different context. They were discussing specifically just whether or not his plea of guilty was valid under due process challenge, I believe. But in there, they specifically note that under several Nevada statutes, I believe I have them here, but if one looks at Millett, essentially that under the Nevada statute, it's not an element of the crime. That the Nevada statutes, under the Nevada statutes, the district court is required to tell him that he has to register as a sex offender. There's no specific finding there that the notification in and of itself is a requirement that he be convicted. And certainly the government possibly could look into jury instructions or other types of materials, but... That's an example there. Excuse me? He pled guilty, right? Yes. So where were the jury instructions? Under the modified categorical analysis. The difficulty of following your argument is we'd send it, if we'd remand it, we'd remand it back to the board. Yes. Is the board an authority on Nevada law and interpreting Nevada statutes so that it will give something that we don't have? Well, what the board is an authority of is the interpretation of what a crime involving moral turpitude is. Under the immigration statutes. I do realize that I'm completely conceding that this court has de novo review over the question of whether or not a criminal statute is a crime involving moral turpitude. But the question here is what constitutes a crime involving moral turpitude. I think that this case has, this court hasn't quite articulated those types of differences, but certainly other courts have, where it states where there's a deference towards what type of conduct that the board or that the agency considers crimes involving moral turpitude. However, the exact application of the elements of the state statutes or the criminal statutes, they say that the court has de novo review for. But in this particular case, what's relevant is that the board should have the opportunity in the first instance to define what type of conduct involves moral turpitude. And in this particular case, the question that the court would be addressing in first impression without allowing the board to address this first is whether or not to, I think that what the petitioner is asking is that the court eliminate this concept of willfulness, which is what the board analyzed, and that the court analyze in first impression whether simple failure to register as a sex offender is a crime involving moral turpitude. Which is the exact type of conduct and definition that the board has the expertise and specialization to define. Do you think all statutes in which there's a failure to register, that make a crime out of a failure to register, would necessarily be, in your view, a crime of moral turpitude? I wouldn't be able to speculate about that without the... I wouldn't be able to speculate about that without the board saying so. And in this particular case, failure to register as a sex offender, while it's not particularly addressed here, it has a fairly extensive history in all 50 states of the union, analyzing exactly why the states initiated this type of registration. The problem with that, because I've been involved in some interpretation of these cases, the states clearly intend it to be strict liability crimes. I don't know any state that's taken a position that accidental failure to register is a defense. And most of them are strict, at least as far as I know, are strict liability crimes. And if so, that's the answer. What I'm saying to you is that you want to take this back to the board, but we have responsibility to make sure the statutory interpretation is correct for other purposes. And the board, for its purposes, may want to import or delete an element that Nevada may find somewhat important. And eventually it all comes back here. So we've got to deal with it de novo, so it doesn't make a lot of sense in this context for us to say, let's let an agency in Washington decide whether or not willfulness is an element of the crime in Nevada. I'm sorry, but I don't think that the board would be usurping the Nevada state's authority here. They're simply interpreting, they're simply making an understanding under Nevada law as to what the elements of the conviction are. Well, the elements of the crime are under Nevada law. I mean, you're making a determination of what the elements of the crime are under Nevada law, right? That's what you want to do. But the underlying question is whether the failure to register as a sex offender in terms of conduct is a crime involving moral turpitude. And again, that's within the, that should be addressed by the board in the first instance. And they didn't do it here, which is the question that they have to address first before the court simply takes it over. Well, they did do it here. Excuse me? They did do it here. You're suggesting here today that the court erred in the way it did it. You're conceding that, right? I'm sorry. No, I'm not. I'm saying that under Navarro-Lopez, that the court could find that, but they need to analyze it in much more detail. They need to specifically state what the elements of the conviction are. Right. You're saying that the board erred in its decision. No, I'm saying that the board under intervening case law, that there's a possibility that it... I'm not saying it did it willfully, but what you're basically saying is that in your view, Navarro-Lopez changed the law to the point that the board's decision is not sustainable on appeal. I would state, I would back off from that because I think that... Otherwise why would remand be required? Remand would be required because the intervening case law would possibly change the board's analysis. So the consequence of that is the board's analysis on the record so far, you would concede is flawed. I would speculate that the board's analysis could change, but I can't state whether or not that the board has to find whether under Navarro-Lopez its analysis would change. That doesn't necessarily mean that its current analysis is... Cannot be sustained. The board's analysis in this particular decision under Navarro-Lopez has... I would state that it goes to the record of conviction to find willfully and lawfully. And under an interpretation of what Navarro-Lopez requires, it's not necessarily that it's flawed to the extent that the board's analysis would change. It's to the extent that the element is not in the statute, but that it is not found by the board here. It was not specifically stated in the board's decision. That's not a flaw or an error. That's simply a difference in analysis that was not necessarily stated here, which is why it should go back to be remanded. Thank you, counsel. May I just state one more thing? Sure. My questions have taken over time. Oh, I'm sorry. No, I was just saying that I would also like to state just very quickly that the board's decision specifically, nowhere in there do they state that the motion to reconsider is denied. It's not in the jurisdiction of the court of appeals. Thank you. Thank you. Two quick points, Your Honor. First, as to the jurisdictional argument that was brought up at the end of counsel's argument as to what was granted and what was denied, the BIA in its May 15th order stated specifically that it was granting the motion to reconsider for the express limited purpose of addressing respondents' challenge to the immigration judge's discretionary denial of cancellation of removal, meaning that it was denied as to the question of whether the failure to register was a crime involving moral turpitude. And secondly, whether or not the failure to register was a categorical crime involving moral turpitude is something that was specifically stated in the board's decision. It was not specifically considered by the BIA when it held that the registration statute punishes some behavior that might be considered to be a crime involving moral turpitude, such as providing false information to the police, as well as some non-turpitudeous behavior, such as the catch-all otherwise violates provision. In that instance, the BIA did specifically consider whether it was a crime involving or whether it was a categorical crime involving moral turpitude and found that it was not. Under Navarro-Lopez, it should not have applied the modified categorical approach, which is the only other basis, and Mr. Placencia Ayala should be released. Thank you.
judges: Farris, Beezer, Thomas